THE HOMAMPOUR LAW FIRM, PLC
ARASH HOMAMPOUR (State Bar No. 165407)
15303 Ventura Boulevard, Suite 1000
Sherman Oaks, California  91403
Phone: (323) 658-8077 | Fax: (323) 658-8477

LAW OFFICES OF MICHAEL J. RAND, APC
MICHAEL J. RAND (State Bar No. 69305)
15760 Ventura Blvd, Suite 700
Encino, California 91436
Phone: (818) 783-3300 | Fax: (818) 783-7595

Attorneys for Plaintiffs JUAN MEDINA and RAMONA MEDINA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| JUAN MEDINA and RAMONA MEDINA,<br><br>      Plaintiffs,<br><br>v.<br><br>HARCO NATIONAL INSURANCE COMPANY; and DOES 1 through 20, inclusive,<br><br>      Defendants. | **CASE NO:**<br><br>**COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

Plaintiffs, JUAN MEDINA and RAMONA MEDINA, as for their complaint against HARCO NATIONAL INSURANCE COMPANY("HARCO"); and DOES 1 through 20, inclusive, allege:

## GENERAL ALLEGATIONS

1. Plaintiffs JUAN MEDINA and RAMONA MEDINA ("PLAINTIFFS"), reside now and at all times relevant to this Complaint, in the County of Los Angeles, State of California.

2. HARCO is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Wake County, North Carolina.

*Complaint - Page 1*

HARCO is engaged in the business of property and casualty insurance and reinsurance.

3.    Plaintiffs are informed, believe and thereon allege that ALVIN FLYNN ("FLYNN") is and was an individual residing in the State of Kansas and was operating the tractor-trailer involved in the subject incident.

4.    Plaintiffs are informed, believe and thereon allege that PILE TRUCKING INC. ("PILE TRUCKING") is a corporation organized and existing under the laws of the State of Kansas and has its principal place of business in Kansas. Plaintiffs are informed, believe and thereon allege that PILE TRUCKING was a federally-authorized and licensed motor carrier.  PLAINTIFFS are informed, believe and thereon allege that PILE TRUCKING frequently and repeatedly operated its vehicles in multiple states of the United States, including the State of California.

5.    All relevant pre-trial and trial related events took place in the City of Los Angles, County of Los Angeles, State of California, this Court has jurisdiction over this matter and venue is proper in this Court.  Such events occurring in the City of Los Angles, County of Los Angeles, State of California include, but are not limited to, FLYNN"S negligent and unlawful operation of the PILE TRUCKING vehicle, the wrongful death of Sophia Medina, all demands for settlement within policy limits, including the service of PLAINTIFFS' Offer to Compromise, and  not less than three of HARCO's express, unreasonable refusals to accept settlement demands within policy limits.

6.    Plaintiffs are informed, believe and thereon allege that because FLYNN and PILE TRUCKING are and were present in Kansas and the subject policy was issued for Kansas residents, the laws of Kansas apply to this action.

## BACKGROUND FACTS

7.    PILE TRUCKING AND FLYNN ("INSUREDS") were insured  under Harco National Insurance Company policy No. TPU3041107-01 ("Policy").  The Policy provided single limit coverage of $1,000,000 per accident. PLAINTIFFS are

*Complaint - Page 2*

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
TELEPHONE (323) 658-8077 • FACSIMILE (323) 658-8477

informed, believe and thereon allege that HARCO knew, at the time it sold the Policy to the INSUREDS, that PILE TRUCKING frequently and repeatedly operated its vehicles in multiple states of the United States, including the State of California. It was, therefore, reasonably foreseeable HARCO, through the conduct of its INSUREDS, would be called upon to conduct its insurance business, or some aspects of it, in the State of California, and did, in fact, do so in this action and in others. A true and correct copy of the policy as provided by HARCO is attached hereto as Exhibit "A." Plaintiffs have not yet been able to verify that this exemplar policy is in fact the full and complete policy.

8.   On or about July 6, 2009, while coverage under the Policy was in effect, PLAINTIFFS' daughter, 18 year old Sophia Medina, was hit by the tractor-trailer operated by FLYNN while he was performing work for PILE TRUCKING. As a result of the accident, Sophia Medina was killed.

9.   As a result of the accident, PLAINTIFFS pursued a claim against FLYNN and PILE TRUCKING.

10.   On August 13, 2010, PLAINTIFFS made a pre-litigation policy limits demand on HARCO for payment of the $1,000,000 Policy. The August 13, 2010 demand, open until September 13, 2010, was rejected by silence.

11.   A Complaint for wrongful death was filed in the Los Angeles Superior Court for the State of California on May 26, 2011, Case No. BC462497.

12.   On August 1, 2011 the matter was removed to the United States District Court, Central District of California, bearing the case number 2:11-cv-06329-GHK-JCG.

13.   PLAINTIFFS thereafter made multiple offers to HARCO to settle for INSUREDS' policy limits before trial, including by way of policy limits demands on December 5, 2011; April 23, 2012; and May 15, 2012. PLAINTIFFS also served California Statutory Offers to Compromise for $999,999 on January 4, 2012.

14.   The only conditions placed on the policy limit offers were that

*Complaint - Page 3*

PLAINTIFFS receive a complete, certified copy of the policy, and that there were no additional policies, including umbrella policies, that might provide coverage.  As to the  Statutory Offer to Compromise for $999,999, the only condition was that each party to the action was to bear its own costs.  The only location from which all such offers were made was the City of Los Angles, County of Los Angeles, State of California

15.    All of the policy limit demands were rejected by HARCO, either by silence or by counter-offers far less than the policy limits. HARCO's wrongful, unreasonable refusals to pay policy limits occurred, among other places, in the City of Los Angles, County of Los Angeles, State of California.

16.    HARCO negligently and in bad faith rejected PLAINTIFFS' repeated offers to settle within the Policy's limits. PLAINTIFFS' case on the issue of liability was strong given that FLYNN ran over a plainly visible bicycle rider that he claims he never saw, but should have seen, and his inconsistent testimony and explanation regarding the details of the incident, the material aspects of which were known before trial to be demonstrably false based upon irrefutable video evidence. PLAINTIFFS' case on damages was strong given the underlying incident involved the death of their 18 year old daughter with whom they were very close. PLAINTIFFS are informed, believe and thereon allege that HARCO, while in the City of Los Angeles, County of Los Angeles, State of California, even rejected the advice of its own retained California attorneys to settle for policy limits. HARCO, therefore, with full knowledge of the potentially catastrophic effect of a large judgment on its INSUREDS, and in complete disregard of the likelihood of a judgment far in excess of its Policy limits, refused to settle within policy limits despite its reasonable and repeated opportunities to do so.  PLAINTIFFS are informed and believe and thereon allege that HARCO and DOES 1 through 20 were motivated by a dishonest intent to deprive the INSUREDS of the benefits of the duty to consider settlement of an action and to act in the best interest of its INSUREDS, rather than in HARCO's own best interests.  The amount

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
TELEPHONE (323) 658-8077 · FACSIMILE (323) 658-8477

*Complaint - Page 4*

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
TELEPHONE (323) 658-8077 · FACSIMILE (323) 658-8477

of financial risk to the INSUREDS was known, foreseeable and substantial as a result of HARCO's refusal to accept PLAINTIFFS' settlement offers.

17. As a result of HARCO'S repeated failure to accept PLAINTIFFS' reasonable settlement demands within policy limits, HARCO improperly and knowingly exposed its insureds to a judgment in excess of the policy limits.

18. The matter proceeded to trial and PLAINTIFFS prevailed. On November 30, 2012, an Amended Judgment on Special Verdict was entered in favor of PLAINTIFFS and against INSUREDS, in the amount of $2,625,000.

19. On April 8, 2013, Magistrate Judge Patrick J. Walsh granted PLAINTIFFS' motion for costs in the amount of $347,577.78, which included $238,047.95 in prejudgment interest.

20. In July 2013, FLYNN and PILE TRUCKING and PLAINTIFFS entered into a written Assignment Agreement in which FLYNN and PILE TRUCKING assigned and transferred to PLAINTIFFS "all claims and causes of action he/it may have now or hereafter acquire against HARCO (and any other related entity) based upon HARCO's failure to settle with PLAINTIFFS and in causing the resulting judgment against DEFENDANTS (including, but not limited to, causes of action for negligence, breach of insurance contracts and bad faith) (the "Assigned Claims"), except any claim for emotional distress or punitive damages." Thus, PLAINTIFFS have standing to bring these claims.

21. INSUREDS appealed the $2,625,000 judgment and $238,047.95 interest entered against them. On February 25, 2015, the Court of Appeals entered an order affirming the $2,625,000 judgment, but vacated the $238,047.95 in interest, leaving the remainder of cost award in place (PLAINTIFFS' costs in the amount of $109,529.83, plus post judgment interest).

\ \ \

\ \ \

\ \ \

*Complaint - Page 5*

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendant HARCO and DOES 1 through 10, inclusive)**

22.     PLAINTIFFS repeat, reallege and incorporate herein by this reference all prior allegations.

23.     Defendants HARCO and DOES 1 through 10, inclusive, and each of them, breached the terms of the Policy by engaging in the acts and omissions detailed above and through their negligent and bad faith rejection of PLAINTIFFS' repeated offers to settle within the Policy's limits.

24.     As a direct and proximate result of Defendants' negligent conduct and breach of contractual obligations, judgment was entered against the INSUREDS in excess of the policy limits, with a balance owed on the judgment.

25.     As a direct and proximate result of HARCO's wrongful failure to settle within policy limits, and its breach of contract, PLAINTIFFS are entitled to collect from HARCO and Does 1 to 10, inclusive, the balance of the unpaid judgment, plus all accrued interest and costs to date, including attorneys fees, pursuant to Kansas Law.

**SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT**

**OF GOOD FAITH AND FAIR DEALING**

**(Against Defendant HARCO and DOES 11 through 20, inclusive)**

26.     PLAINTIFFS repeat, reallege, and incorporate by this reference as though set forth in full herein all prior allegations of this Complaint.

27.     Implied in the insurance policy (Exhibit "A") was a provision of good faith and fair dealing, which required that neither party do anything that would injure the rights of any other party to receive the benefits for which the Policy was contracted.

28.     By virtue of the conduct previously alleged in this Complaint and incorporated herein by reference, Defendant HARCO and Does 11 through 20,

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
TELEPHONE (323) 658-8077 • FACSIMILE (323) 658-8477

inclusive, and each of them, breached the implied covenant of good faith and fair dealing, as contained in the Policy.

29.     Plaintiffs are informed, believe and thereon allege that the INSUREDS had performed all the terms and conditions of the Policy to be performed.

30.      As a direct and proximate result of Defendants' negligent and bad faith rejection of PLAINTIFFS' repeated offers to settle within the policy's limits, judgment was entered against the INSUREDS in excess of the Policy limits, with a balance owed on the judgment.

31.     As a direct and proximate result of HARCO's breach of the implied covenant of good faith and fair dealing, PLAINTIFFS are entitled to collect from HARCO and Does 1 to 10, inclusive, the balance of the unpaid judgment, plus all accrued interest and costs to date, including attorneys fees, pursuant to Kansas Law.

### REQUEST FOR JURY TRIAL

32.     PLAINTIFFS request a trial by jury.

### PRAYER

WHEREFORE, PLAINTIFFS demand judgement against Defendants as follows:

1.     Payment of the Judgment amount plus all accrued interest and costs;

2.     Attorneys fees incurred by Assignees and incurred by PLAINTIFFS in seeking policy benefits;

3.     Prejudgment interest as allowed by law;

4.     For an award of the costs incurred by PLAINTIFFS in bringing and maintaining this action; and,

5.     For such other and further relief which this Court deems just and proper.

Dated: June 19, 2015

THE HOMAMPOUR LAW FIRM
A Professional Law Corporation

By: _____
Arash Homampour,
Attorneys for Plaintiffs JUAN MEDINA
and RAMONA MEDINA

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1000
SHERMAN OAKS, CALIFORNIA 91403
TELEPHONE (323) 658-8077 • FACSIMILE (323) 658-8477

*Complaint - Page 7*

# Exhibit A

# HARCO ᴸ TIONAL INSURANCE ᴸ MPANY

2850 W. GOLF ROAD, ROLLING MEADOWS, IL 60008

PHONE: 800-448-4642    FAX: 847-321-4810

## TRUCKERS DECLARATIONS

POLICY NO. **TPU3041108-01**         AGENCY HUB INT'L TRANSPORTATION INSURANCE

*Rewrite*                            SERVICES, INC.

RENEWAL OF NO. TPU3041108            AGENCY NO. 313    96-551

**ITEM ONE**

NAMED INSURED:    PILE TRUCKING, INC.

MAILING ADDRESS:    PO BOX 1624          GARDEN CITY, KS  67846

GARAGING ADDRESS:  3023 WEST MARY        GARDEN CITY, KS  67846

POLICY PERIOD:    From 08/01/2008        To  08/01/2009

at 12:01 A.M. Standard Time at your mailing address shown above.

**FORM OF BUSINESS:**

☒ CORPORATION    ☐ LIMITED LIABILITY COMPANY    ☐ INDIVIDUAL

☐ PARTNERSHIP                                   ☐ OTHER _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Premium shown is payable: $ ▮▮▮▮▮▮▮▮▮ at inception.

(ESCROW)

**ENDORSEMENTS ATTACHED TO THIS POLICY:**

20-0126(03/02)  CA0122(05/06)  FORM F  20-0154(03/06)  CA0265(02/96)  20-0090(01/93)
IL0017(11/98)  CA2214(10/97)  CA9954(07/97)  CA0012(03/06)  CA2137(01/05)
GU207(01/07)  CA9948(03/06)  IL0003(09/07)  IL0021(07/02)  CA2394(03/06)
MCS-90(04/00)  CA2386(01/06)

RECEIVED

AUG 0 ▮ ▮▮▮

COUNTRYWIDE
TRANSPORTATION

COUNTERSIGNED    07/28/2008 MSF          BY    *James E. Joyce Jr.*

(Date)                                   (Authorized Representative)

POLICY NUMBER: TPU3041108-01

**ITEM TWO**

**SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Truckers Coverage Form next to the name of the coverage.       * This policy may be subject to final audit.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the Covered Autos Section of the Truckers Coverage Form shows which autos are covered autos.) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 47 50 51 | $ 1,000,000 | SEE ITEM SEVEN |
| PERSONAL INJURY PROTECTION (or equivalent No-Fault Coverage) (P.I.P.) | 47 50 51 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS $        DED. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-Fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | |
| PROPERTY PROTECTION INSURANCE (Michigan only) (P.P.I.) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $        DED. FOR EACH ACCIDENT. | |
| MEDICAL PAYMENTS | | $ | |
| UNINSURED MOTORISTS | 47 50 51 | $ 50,000 BI | SEE ITEM SEVEN |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 47 50 51 | $ 50,000 BI | SEE ITEM SEVEN |
| TRAILER INTERCHANGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR, OR $        WHICHEVER IS LESS. MINUS $        DED. FOR EACH COVERED AUTO. | |
| TRAILER INTERCHANGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR, OR $        WHICHEVER IS LESS, MINUS $        DED. FOR EACH COVERED AUTO. | |
| TRAILER INTERCHANGE COLLISION COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR, OR $        WHICHEVER IS LESS, MINUS $        DED. FOR EACH COVERED AUTO. | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $        DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $        DED. FOR EACH COVERED AUTO. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $        DED. FOR EACH COVERED AUTO. | |
| PHYSICAL DAMAGE TOWING AND LABOR | | $        For Each Disablement Of A Private Passenger "Auto". | |

| | |
|---|---|
| | SEE ITEMS 4 & 5 |
| PREMIUM FOR ENDORSEMENTS | |
| * ESTIMATED TOTAL PREMIUM | ▮▮▮▮▮ |

20-0154 03 06
07/28/2008 MSF [80878]

© ISO Properties, Inc., 2005

HARCO/BOB GEHRKE COPY

POLICY NUMBER: TPU3041108-01

## ITEM THREE

### SCHEDULE OF COVERED AUTOS YOU OWN

| Covered Auto No. | DESCRIPTION Year, Model, Trade Name, Body Type, Serial Number (S) / Vehicle Identification Number (VIN) | | Actual Cost | TERRITORY Town & State Where The Covered Auto Will Be Principally Garaged |
|---|---|---|---|---|
| | SEE ITEM SEVEN, 20-0090 | | | |

| Covered Auto No. | CLASSIFICATION | | | | Primary Rating Factor | | Sec-ondary Rating Factor | Code | EXCEPT For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below As Interests May Appear At the Time Of The Loss. |
|---|---|---|---|---|---|---|---|---|---|
| | Radius Of Operation (in miles) | Business Use s=service r=retail c=commercial | GVW, GCW Or Vehicle Seating Capacity | Age Grp | Liab. | Phy. Dmg. | | | |
| | U/L | C | | | | | | | |

### COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.)

| Covered Auto No. | LIABILITY | | UNINSURED MOTORIST | | UNDERINSURED MOTORIST | | P.I.P. | | ADDED P.I.P. | P.P.I. (MI Only) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Limit In Thousands | Premium | Limit In Thousands | Premium | Limit In Thousands | Premium | Limit * Minus Ded. Shown Below | Pre-mium | Limit * Pre-mium | Limit * Minus Ded. Shown Below | Pre-mium |
| | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | |

| Covered Auto No. | AUTO MEDICAL PAYMENTS | | COMPREHENSIVE | | SPECIFIED CAUSES OF LOSS | | COLLISION | |
|---|---|---|---|---|---|---|---|---|
| | Limit | Premium | Limit ** Minus Deductible Shown Below | Premium | Limit ** Minus Deductible Shown Below | Premium | Limit ** Minus Deductible Shown Below | Premium |
| | | | | | | | | |
| TOTAL | | | | | | | | |

ADDITIONAL COVERAGES

\* = Limit stated in each applicable P.I.P. or P.P.I. Endorsement.

\*\* = Limit Stated in ITEM TWO.

Ded. = Deductible

HARCO/BOB GEHRKE COPY

POLICY NUMBER: TPU3041108-01

## ITEM FOUR

### SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

| LIABILITY COVERAGE – RATING BASIS, COST OF HIRE – AUTOS USED IN YOUR TRUCKING OPERATIONS | | |
|---|---|---|
| ESTIMATED COST OF HIRE | RATE PER EACH $100 COST OF HIRE | TOTAL ESTIMATED PREMIUM |
| 1500 | 8.59 | INC |

| LIABILITY COVERAGE – RATING BASIS, COST OF HIRE – AUTOS NOT USED IN YOUR TRUCKING OPERATIONS | | | | |
|---|---|---|---|---|
| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (If Liability Coverage is Primary) | PREMIUM |
| | | | | |
| | | | TOTAL PREMIUM | |

| LIABILITY COVERAGE – RATING BASIS, NUMBER OF DAYS – (FOR MOBILE OR FARM EQUIPMENT – RENTAL PERIOD BASIS) | | | | |
|---|---|---|---|---|
| STATE | ESTIMATED NUMBER OF DAYS EQUIPMENT WILL BE RENTED | BASE PREMIUM | FACTOR | PREMIUM |
| | | | | |
| | | | TOTAL PREMIUM | |

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIR OR $ WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | | | |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIR, OR $ WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | | | |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIR, OR $ WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO. | | | |
| | | | TOTAL PREMIUM | |

Cost of Hire means:

(a) The total dollar amount of costs you incurred for the hire of automobiles (includes trailers and semitrailers), and if not included therein,

(b) The total remunerations of all operators and drivers helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and,

(c) The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the insured, paid to the lessor or owner, or paid to others.

HARCO/BOB GEHRKE COPY

POLICY NUMBER: TPU3041108-01

## ITEM FIVE

### SCHEDULE FOR NON-OWNERSHIP LIABILITY

| RATING BASIS | NUMBER | PREMIUM |
|---|---|---|
| Number Of Employees | 25-50 | INC |
| Number Of Partners | | |
| | TOTAL | INC |

## ITEM SIX

### TRAILER INTERCHANGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE | DAILY RATE | ESTIMATED PREMIUM |
|---|---|---|---|
| COMPREHENSIVE | STATED IN ITEM TWO | | |
| SPECIFIED CAUSES OF LOSS | | | |
| COLLISION | | | |
| | | TOTAL PREMIUM | |

## ITEM SEVEN

### SCHEDULE FOR GROSS RECEIPTS, VALUE REPORTING OR MILEAGE RATING BASIS – LIABILITY OR PHYSICAL DAMAGE COVERAGE

| ESTIMATED YEARLY [X] Gross Receipts [ ] Mileage [ ] Units | RATES [X] Per $100 Of Gross Receipts [ ] Per 100 Miles [ ] Per Power Unit | | PREMIUMS | |
|---|---|---|---|---|
| | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS |
| ▓▓▓▓ | 3.25 | | | |
| | | | | |
| | | TOTAL PREMIUMS | ▓▓▓▓ | |
| | | MINIMUM PREMIUMS | ▓▓▓▓ | |

| PHYSICAL DAMAGE COVERAGE | | |
|---|---|---|
| ESTIMATED YEARLY VALUES | RATES PER $100 OF MONTHLY VALUES | PREMIUM |
| | | |
| | | |
| | | |
| | TOTAL PREMIUM | |
| | MINIMUM PREMIUM | |

VALUE REPORTING MEANS THE TOTAL VALUE OF ALL COVERED VEHICLES. MILEAGE MEANS THE TOTAL LADEN AND UNLADEN MILEAGE OF ALL REVENUE PRODUCING UNITS OPERATING DURING THE POLICY PERIOD.

When used as a premium basis:

Gross Receipts means the total amount to which you are entitled for shipping or transporting property during the policy period regardless of whether you or any other carrier originate the shipment or transportation. "Gross Receipts" includes the total amount received from renting equipment, with or without drivers, to anyone who is not a "trucker" and 15% of the total amount received from renting any equipment to any "trucker". Gross Receipts does not include:

A. Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own FMCSA or PUC permits.

B. Advertising Revenue.

C. Taxes which you collect as a separate item and remit directly to a governmental division.

D. C.O.D. collections for cost of mail or merchandise including collection fees.

E. Warehouse storage fees.

20-0154 03 06
07/28/2008 MSF [80878]

Page 5 of 5
© ISO Properties, Inc., 2005

HARCO/BOB GEHRKE COPY

ENDORSEMENTS FOR
## MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
## UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to __PILE TRUCKING, INC.__ of __GARDEN CITY, KS__

Dated at __Minneapolis, MN__ this __28TH__ day of __JULY__ , 20 __08__

Amending Policy No. __TPU3041108-01__ Effective Date __08/01/2008__

Name of Insurance Company __HARCO NATIONAL INSURANCE CO.__

Countersigned by _____
Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "[X]," for the limits shown:

[X]  This insurance is primary and the company shall not be liable for amounts in excess of $ __1,000,000__ for each accident.

[ ]  This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: __(952) 893-1234__ .

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**Accident** includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**Motor Vehicle** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**Bodily Injury** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**Property Damage** means damage to or loss of use of tangible property.
**Environmental Restoration** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.
**Public Liability** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from

the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.

Form MCS-90 (4/2000)                                                                                    Page 1 of 2

07/28/2008 MSF [80878]

HARCO/BOB GEHRKE COPY

COMMERCIAL AUTO
CA 01 22 05 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Kansas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Liability Coverage

1. For coverage and limits required by the Kansas Financial Responsibility law, **Exclusions** is changed as follows:

   a. The **Workers' Compensation** Exclusion is replaced by the following:

   Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or any similar law.

   b. The **Employee Indemnification And Employers' Liability** Exclusion is replaced by the following:

   This coverage does not apply to "bodily injury" to any "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment by the "insured" or while performing duties related to the conduct of the "insured's" business if benefits are required or available for the "employee" under any workers' compensation or disability benefits law or under any similar law. This exclusion does not apply to liability assumed by the "insured" under an "insured contract".

   c. The **Care, Custody Or Control** Exclusion is replaced by the following:

   This coverage does not apply to "property damage" to property owned by, rented to, or in charge of or transported by an "insured". However, this exclusion does not apply to "property damage" to a rented residence or private garage or to liability assumed by the "insured" under a sidetrack agreement.

   d. The following is added to the **War Exclusion**:

   This Exclusion applies only to the extent that the limit of insurance for this coverage in this policy exceeds the limit required by the Kansas Automobile Injury Reparations Act.

   e. The **Racing** Exclusion, if contained in the coverage form, does not apply.

   f. The exclusion relating to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants does not apply if the discharge, dispersal, release or escape is sudden and accidental.

2. Our Limit Of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by Kansas law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident".

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $10,000 for "property damage" caused by any one "accident".

   This provision will not change our limit of insurance.

© ISO Properties, Inc., 2005 ☐

COMMERCIAL AUTO
CA 02 65 02 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# KANSAS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. If you are an individual and a covered "auto" you own is of the "private passenger type", and this policy covers fewer than five "autos" and does not insure the motor vehicle hazard of garages, motor vehicle sales agencies, repair shops, service stations or public parking places, the CANCELLATION Common-Policy Condition does not apply to that "auto". The following Condition applies instead:

**ENDING THIS POLICY**

1. **Cancellation**

   a. You may cancel the policy by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this policy by mailing you notice of cancellation. If we cancel for nonpayment of premium, we will mail you at least 10 days notice. If we cancel for any other reason, we will mail you at least 30 days written notice.

   c. When this policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel LIABILITY COVERAGE and PERSONAL INJURY PROTECTION only for one or more of the following reasons:

   (1) Nonpayment of premium.

   (2) Fraudulent misrepresentation in obtaining this policy.

   (3) The "insured" violates any terms or conditions of the policy.

(4) You or any other operator who either resides in the same household or customarily operates a covered "auto":

   (a) Has had his or her driver's license suspended or revoked during the policy period.

   (b) Is or becomes subject to epilepsy or heart attacks and cannot produce a physician's certificate stating that he or she can operate a motor vehicle safely.

   (c) Has been convicted during the policy period or 36 months before it, for:

   (i) Any felony, or

   (ii) Criminal negligence resulting in death, homicide or assault, arising from the operation of a motor vehicle, or

   (iii) Driving a motor vehicle while intoxicated or under the influence of drugs, or

   (iv) Leaving the scene of an "accident" without stopping to report, or

   (v) Theft of a motor vehicle, or

   (vi) Making false statements when applying for a driver's license, or

          Copyright, Insurance Services Office, Inc., 1995            ☐

**B.** For all policies not described in paragraph **A.** above, the CANCELLATION Common Policy Condition does not apply. The following Condition applies instead:

**ENDING THIS POLICY**

**1. Cancellation**

a. You may cancel the policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

b. We may cancel this policy by mailing you written notice of cancellation, stating our reasons for cancellation. If we cancel for nonpayment of premium we will mail you at least 10 days notice. If we cancel for any other reason, we will mail you at least 30 days notice.

c. When this policy is in effect for 80 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium.

(2) This policy was issued because of material misrepresentation.

(3) Any "insured" violated any of the material terms and conditions of this policy.

(4) Unfavorable underwriting factors, specific to the "insured", exist that were not present at the inception of this policy.

(5) A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas.

(6) A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

d. The effective date of cancellation stated in the notice shall become the end of the policy period.

e. If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**2. Nonrenewal**

a. If we decide not to renew or continue this policy, we will mail you written notice at least 60 days before the end of the policy period stating the reasons for nonrenewal. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

b. If we fail to mail proper notice and you obtain other insurance, this policy will end on the effective date of that insurance.

**3. Mailing of Notices**

Any notice of cancellation or nonrenewal will be mailed by certified or registered mail or United States post office certificate of mailing to the first named insured's last mailing address known to us. Proof of mailing of any notice will be sufficient proof of notice.

**4. Notice to Director of Vehicles**

If you are a Vehicle Dealer or Mobile Home Dealer, the following provision applies:

If the policy is cancelled, we will notify the Director of Vehicles 30 days before the effective date of cancellation.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc. 1998

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 22 14 10 97**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Kansas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

We agree with you, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

### SCHEDULE

| Benefits | Limit |
|---|---|
| A. Medical Expenses | Up to $4,500 |
| B. Rehabilitation Expenses | Up to $4,500 |
| C. Work Loss | $900 per month maximum, up to 1 year maximum |
| D. Essential Service Expenses | Up to $25 per day, up to 365 days maximum |
| E. Funeral Expenses | Up to $2,000 per person |
| F. Survivor's Loss | $900 per month maximum and $25 per day essential service expenses, both up to 365 days maximum * |
| * Survivors loss shall be paid for a period not to exceed 1 year after the "insured's" death, less the number of months the "insured" received work loss prior to his or her death. | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**D. Limit Of Insurance**

Regardless of the number of "insureds", policies or bonds applicable, claims made, premiums paid or covered "autos" to which this coverage applies, the most we will pay for personal injury protection benefits for "bodily injury" sustained by any one person in any one "motor vehicle accident" is limited as follows:

1. Medical Expenses shall not include rehabilitation expenses. The maximum amount payable shall not exceed $4,500;

2. Rehabilitation Expenses shall not include medical expenses. The maximum amount payable shall not exceed $4,500;

3. Work Loss shall not exceed:

   a. $900 per month for a period of no more than one year after the date the "insured" first becomes unable to engage in available and appropriate gainful activity, and

   b. Shall be limited to 85% of any such work loss unless such amount payable is deemed includable in gross income for federal income tax purposes;

4. Essential Service Expenses incurred during the lifetime of the "insured" shall not exceed $25 per day for a period not to exceed three hundred sixty-five days after the date such expenses are first incurred;

5. Funeral Expenses shall not exceed $2,000;

6. Survivor's Loss shall not exceed $900 per month for the loss of "monthly earnings" of the "insured" and shall not exceed $25 per day for essential service expenses. All survivor's loss shall be paid for a period not to exceed one year after the "insured's" death, less the number of months the "insured" received work loss prior to his or her death.

7. Any amount payable by us under the terms of this coverage shall be reduced by the amount payable on account of such "bodily injury" under any workers' compensation law.

**E. Changes In Conditions**

The Conditions are changed for Personal Injury Protection as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is amended by the addition of the following:

   a. If an "insured" or such person's legal representative or "survivors" institute legal action to recover damages for "bodily injury", such person must as soon as practicable give us a copy of the summons and complaint or other process served in connection with the legal action.

   b. The "insured" or someone on such person's behalf must as soon as practicable give us written proof of claim, including:

      (1) Full particulars of the nature and extent of the "bodily injury", treatment and rehabilitation received and contemplated; and

      (2) Such other information that will help us determine the amount due and payable.

      No claim for personal injury protection benefits shall be made after two years from the date of the "bodily injury".

2. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   a. In the event of recovery by the "insured", such person's dependents or personal representatives by judgment, settlement or otherwise against the party causing "bodily injury" pursuant to K.S.A. Supp. 40-3117, the "insured's" rights shall be transferred to us to the extent of duplicative personal injury protection benefits provided to date of such recovery. We shall have a lien against such recovery and may intervene in any action to protect and enforce such lien. The amount of any judgment in any such action, settlement or recovery otherwise recovered by the "insured", such person's dependents or personal representatives prior to the completion of personal injury protection benefits, otherwise actually paid and recovered which is in excess of the amount of personal injury protection benefits paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of said personal injury protection benefits.

   b. In the event an "insured", such person's dependents or personal representative fails to commence an action against the party causing the "bodily injury" within eighteen months after the date of the "accident" that resulted in injury, such failure shall operate as an assignment to us of any cause of action which the "insured", the dependents or personal representatives of such person may have against the party causing "bodily injury" for the purpose and to the extent of recovery of damages which are duplicative of personal injury protection benefits. We may enforce the action in our name or that of the "insured", representatives or dependents of the "insured" for their benefit as their interest may appear by proper action in any court of competent jurisdiction.

Copyright, Insurance Services Office, Inc., 1997

b. One-twelfth of the anticipated annual earnings of an "insured" who is not regularly employed or self-employed, or who is unemployed, from the time such person would reasonably have been expected to be so employed. Anticipated annual earnings of an unemployed "insured" who has previously been employed or self-employed shall be calculated by averaging the annual compensation of such person for a period not to exceed five years preceding the year of such person's "bodily injury", during which such person was employed; or

c. With respect to Survivor's Loss in the event of death of an "insured" who was a social security recipient or a retirement or pension benefit recipient, or both, at the time of such "insured's" death, one-twelfth of the annual amount of the difference between the annual amount of social security benefits or retirement benefits, or both, which the "insured" was receiving at the time of such person's death and the annual amount of social security benefits or retirement benefits, or both, that the survivor is receiving after the time of such "insured's" death.

3. "Motor vehicle" means a self-propelled vehicle of a kind required to be registered in the state of Kansas including any trailer, semi-trailer, or pole trailer designed for use with such a vehicle; but shall not include a motorized bicycle.

4. "Named insured" means the individual named in the declarations and also includes such person's spouse, if a resident of the same household, and also includes the owner.

5. "Family member" means a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household, whether or not temporarily residing elsewhere.

6. "Occupying" means in or upon or entering into or alighting from.

7. "Survivor" means a deceased "insured's" spouse, or child under the age of eighteen years, where such person's death resulted from a "bodily injury".

CA 22 14 10 97              Copyright, Insurance Services Office, Inc., 1997              Page 5 of 5      □

POLICY NUMBER:

COMMERCIAL AUTO
CA 21 37 01 05

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KANSAS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Kansas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | |
| | (Authorized Representative) |

### SCHEDULE

| LIMIT OF INSURANCE | |
|---|---|
| $ | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", we will pay under this coverage only if a. or b. below applies:

   a. The limit of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

CA 21 37 01 05

© ISO Properties, Inc., 2004

Page 1 of 4    □

b. Promptly send us copies of the legal papers if a "suit" is brought.

c. A person seeking Uninsured Motorists Coverage must also:

(1) Notify us in writing, by certified mail, of a tentative settlement between the "insured" and the insurer of a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle"; and

(2) Allow us 60 days after receipt of the written notice to advance payment to that "insured", in an amount equal to the tentative settlement, to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph b. of the definition of "uninsured motor vehicle".

Such written notice shall include written documentation of all damages incurred, copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b. We do not have a right of recovery with respect to damages resulting from an "accident" with a vehicle described in Paragraphs a., c. and d. of the definition of "uninsured motor vehicle" to which a liability bond or policy applies at the time of the "accident", but the bonding or insuring company is or becomes insolvent.

c. Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle" if we:

(1) Have been given written notice by certified mail of a tentative agreement between the "insured" and the insuring company of the owner or operator of the underinsured motor vehicle to settle for liability limits; and

(2) Fail to advance payments to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of the notice.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

(2) We also have a right to recover the advance payment.

4. The **Two Or More Coverage Forms Or Policies Issued By Us** General Condition does not apply.

5. The **Concealment, Misrepresentation Or Fraud** General Condition does not apply.

6. The following condition is added:

**ARBITRATION**

a. If, after a claim has been made, a dispute arises because we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the parties may agree to arbitration. One party cannot force the other party into arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If the parties agree to arbitration, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. Any decision agreed to by the arbitrators will not be binding.

c. Once arbitration is agreed to by both parties, either party has the right to bring arbitration under K.S.A. Sections 5-201 – 5-213 inclusive, in lieu of the arbitration procedure provided in this condition.

    © ISO Properties, Inc., 2004       □

COMMERCIAL AUTO
CA 99 48 03 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO, MOTOR CARRIER AND TRUCKERS COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. **Liability Coverage** is changed as follows:

  1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

  2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

B. **Changes In Definitions**

  For the purposes of this endorsement, Paragraph **D.** of the Definitions Section is replaced by the following:

  D. "Covered pollution cost or expense" means any cost or expense arising out of:

    1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  a. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

  b. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

  (1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

  (2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

CA 99 48 03 06        © ISO Properties, Inc., 2005        Page 1 of 1    ☐

IL 00 03 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 03 09 07                              © ISO Properties, Inc., 2006                              Page 1 of 1        ☐

IL 00 21 07 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material."

Copyright, ISO Properties, Inc., 2001

COMMERCIAL AUTO<br>CA 23 94 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added to Paragraph B. **Exclusions of Section II – Liability Coverage** in the Business Auto, Motor Carrier and Truckers Coverage Forms and for **"Garage Operations" – Covered "Autos"** in the Garage Coverage Form:

**SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE**

This insurance does not apply to:

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

**B. Additional Definitions**

As used in this endorsement:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

E

COMMERCIAL AUTO
CA 23 86 01 06

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM ABOVE MINIMUM STATUTORY LIMITS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

## EXCLUSION OF TERRORISM

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded, regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

CA 23 86 01 06                    © ISO Properties, Inc., 2004                    Page 1 of 3         ☐

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph C.5. is exceeded.

With respect to this Exclusion, Paragraph C.5. describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

D. In the event of any incident of "terrorism" that is not subject to the Exclusion in Paragraphs B. or C., coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

**HARCO**
**NATIONAL**
**INSURANCE**
**COMPANY**

INSURED:                    PILE TRUCKING INC

POLICY NUMBER:              TPU3041108-01

POLICY PERIOD:             08-01-08  THROUGH  08-01-09

### GROSS RECEIPTS PREMIUMS AND PAYMENT ENDORSEMENT

YOU HAVE AGREED TO SEND US A REPORT EVERY MONTH SHOWING YOUR GROSS RECEIPTS. YOU WILL PAY US A PREMIUM OF _____ FOR EACH $100 OF GROSS RECEIPTS.

YOU WILL SEND US THESE REPORTS AND THE PREMIUM WITHIN 15 DAYS AFTER THE END OF EACH MONTHLY REPORTING PERIOD.

THE FIRST MONTHS REPORT WILL BE DUE BY __09-15-08__

FOR THE MONTHLY PERIOD OF _____08-01-08  THROUGH  08-31-08_____.

AND THE FOLLOWING REPORTS WILL BE DUE BY THE 15TH OF EACH SUBSEQUENT MONTH.

THE ESTIMATED TOTAL ANNUAL PREMIUM IS: $ _____.

THE ANNUAL MINIMUM PREMIUM IS: _____ $ _____.

THE MONTHLY MINIMUM PREMIUM IS: _____ $ _____.

THE ADVANCE DEPOSIT PREMIUM IS: _____ $ _____.

THE ADVANCE DEPOSIT PREMIUM WILL BE PAID BY YOU TO US AT THE INCEPTION DATE OF THE POICY. THE ADVANCE DEPOSIT PREMIUM WILL BE HELD BY US IN ESCROW UNTIL THE FINAL MONTHLY REPORT HAS BEEN RECEIVED BY US. IF YOUR POLICY IS SUBJECT TO A FINAL AUDIT, THAT WILL BE COMPLETED BEFORE THE ADVANCE DEPOSIT PREMIUM WILL BE RETURNED TO YOU BY US. IF THE FINAL AUDIT DEVELOPS AN ADDITIONAL PREMIUM, THE ADVANCE DEPOSIT PREMIUM WILL BE APPLIED TOWARDS ANY OUTSTANDING PREMIUM BALANCE DUE TO US BY YOU.

20-0090 (01/93)

POLICY NUMBER:

COMMERCIAL AUTO
CA 99 54 07 97

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COVERED AUTO DESIGNATION SYMBOL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

**Section I – Covered Autos** is amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| | | **For use with the Business Auto Coverage Form** |
| 10 | = | |
| | | **For use with the Garage Coverage Form** |
| 32 | = | |
| | | **For use with the Truckers Coverage Form** |
| 51 | = | Only those trucks,tractors and "trailers" you own (and for Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks,tractors and "trailers" you acquire ownership of after the policy begins.<br>No coverage is provided for private passenger type vehicles and service vehicles including, but not limited to, vans and pickup trucks owned by the Named Insured. |
| 52 | = | |

CA 99 54 07 97                Copyright, Insurance Services Office, Inc., 1997                Page 1 of 2    □

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| INSURANCE COMPANY | |
|---|---|
| HARCO NATIONAL INSURANCE COMPANY | |
| Endorsement Effective | Policy Number<br>TPU3041108-01 |
| Named Insured<br>PILE TRUCKING, INC. | Countersigned By<br>*James E. Joyce Jr.*<br>(Authorized Representative) |

POLICY PERIOD    08/01/2008   -   08/01/2009

SCHEDULE

Name of Additional Insured:                          Address:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                          ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The additional insured named in the Schedule is an "insured" for the use of a covered "auto" you own or hire, "but only for liability arising out of negligent acts or omissions of the Named Insured. The following provisions apply:

1.    LIABILITY COVERAGE is primary for the additional insured.

2.    If we cancel the policy or reduce the LIABILITY COVERAGE LIMIT OF INSURANCE we will give the additional insured 10 days advance notice.

Includes material copyrighted from the Insurance Services Office, Inc., 1985

GU207 (01/07)

[80878] 07/28/2008-

HARCO/BOB GEHRKE COPY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| INSURANCE COMPANY<br>HARCO NATIONAL INSURANCE COMPANY | |
|---|---|
| Endorsement Effective | Policy Number<br>TPU3041108-01 |
| Named Insured<br>PILE TRUCKING, INC. | Countersigned By<br><br>(Authorized Representative) |

POLICY PERIOD    08/01/2008    –    08/01/2009

SCHEDULE

**Name of Additional Insured:**                    **Address:**

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The additional insured named in the Schedule is an "insured" for the use of a covered "auto" you own or hire, "but only for liability arising out of negligent acts or omissions of the Named Insured. The following provisions apply:

1.    LIABILITY COVERAGE is primary for the additional insured.

2.    If we cancel the policy or reduce the LIABILITY COVERAGE LIMIT OF INSURANCE we will give the additional insured 10 days advance notice.

Includes material copyrighted from the Insurance Services Office, Inc., 1985

GU207 (01/07)

[80878]  07/28/2008-

HARCO/BOB GEHRKE COPY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ADDITIONAL INSURED**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| INSURANCE COMPANY HARCO NATIONAL INSURANCE COMPANY | |
|---|---|
| Endorsement Effective | Policy Number TPU3041108-01 |
| Named Insured PILE TRUCKING, INC. | Countersigned By *James E. Joyce Jr.* (Authorized Representative) |

POLICY PERIOD    08/01/2008   -   08/01/2009

**SCHEDULE**

**Name of Additional Insured:**                                  **Address:**

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The additional insured named in the Schedule is an "insured" for the use of a covered "auto" you own or hire, "but only for liability arising out of negligent acts or omissions of the Named Insured. The following provisions apply:

1.    LIABILITY COVERAGE is primary for the additional insured.

2.    If we cancel the policy or reduce the LIABILITY COVERAGE LIMIT OF INSURANCE we will give the additional insured 10 days advance notice.

Includes material copyrighted from the Insurance Services Office, Inc., 1985

GU207 (01/07)

[80878]  07/28/2008-

HARCO/BOB GEHRKE COPY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| INSURANCE COMPANY HARCO NATIONAL INSURANCE COMPANY | |
|---|---|
| Endorsement Effective | Policy Number TPU3041108-01 |
| Named Insured PILE TRUCKING, INC. | Countersigned By *James E. Joyce Jr.* (Authorized Representative) |

POLICY PERIOD    08/01/2008    –    08/01/2009

## SCHEDULE

**Name of Additional Insured:**                          **Address:**

    

(if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The additional insured named in the Schedule is an "insured" for the use of a covered "auto" you own or hire, "but only for liability arising out of negligent acts or omissions of the Named Insured. The following provisions apply:

1.     LIABILITY COVERAGE is primary for the additional insured.

2.     If we cancel the policy or reduce the LIABILITY COVERAGE LIMIT OF INSURANCE we will give the additional insured 10 days advance notice.

Includes material copyrighted from the Insurance Services Office, Inc., 1985

GU207 (01/07)

[80878]  07/28/2008-

HARCO/BOB GEHRKE COPY